**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| ESTATE OF ABYESH THULUNG, deceased, by and through KUMARI GURUNG, Administrator of the Estate; 1170 Hilltop Drive Akron, OH 44310 | CASE NO.: JUDGE_____ |
| HEM THULUNG, individually; 1170 Hilltop Drive Akron, OH 44310 | **COMPLAINT AND JURY DEMAND** |
| KUMARI GURUNG, individually; 1170 Hilltop Drive Akron, OH 44310 | |
| Plaintiffs, | |
| v | |
| AKRON PUBLIC SCHOOLS DISTRICT BOARD OF EDUCATION 10 N. Main Street Akron, Ohio 44308; | |
| DR. MICHAEL ROBINSON, Superintendent, AKRON PUBLIC SCHOOLS BOARD OF EDUCATION, in his individual and official capacities 10 N. Main Street Akron, Ohio 44308; | |
| AMANDA MORGAN, Principal, NIHF Middle School, in her individual and official capacities 10 N. Main Street | |

1

Akron, Ohio 44308;                              :
                                                :
DENISE BEHARY, Assistant Principal,             :
NIHF Middle School, in her individual           :
and official capacities                         :
10 N. Main Street                               :
Akron, Ohio 44308;                              :
                                                :
JESSICA FARRELL, Assistant                      :
Principal, NIHF Middle School, in her           :
individual and official capacities              :
10 N. Main Street                               :
Akron, Ohio 44308;                              :
                                                :
SHENEEKA RODGER, Counselor,                     :
NIHF Middle School, in her individual           :
and official capacities                         :
10 N. Main Street                               ::
Akron, Ohio 44308;                              :
                                                :
KASEY JONES, Teacher, NIHF Middle               :
School, in his individual and official          :
capacities                                      :
10 N. Main Street                               :
Akron, Ohio 44308;                              :
                                                :
KALLIE WALKER, Teacher, NIHF                    :
Middle School, in her individual and            :
official capacities                             :
10 N. Main Street                               :
Akron, Ohio 44308; and,                         :
                                                :
LISA WHIDDON, RN, Nurse, NIHF                   :
Middle School, in her individual and            :
official capacities                             :
10 N. Main Street                               :
Akron, Ohio 44308                               :
                                                :
Defendants.                                     :

## INTRODUCTION

This civil rights / wrongful death action arises from the bullying and harassment of 11-

year-old Abyesh Thulung ("Abyesh") by other Akron Public School students because of his race

2

and national origin that occurred throughout Abyesh's fifth grade year at Akron Public Schools' National Inventors Hall of Fame ("NIHF") Middle School.  The Akron Public School records show the school knew Abyesh was being subjected to repeated bullying because of his race and national origin but did nothing to prevent it and, in fact, affirmatively punished Abyesh when he reported the bullying to APS.

 Abyesh was born in a Bhutanese refugee camp in Nepal and immigrated with his parents to the United States at the age of 2.  Abyesh started 5th grade at NIHF Middle school in August of 2023 and was immediately subjected to bullying, harassment, assault, battery, and racial discrimination by certain other students at school and was further bullied and harassed online, because of his Asian race and Nepali-Bhutanese national origin.

Abyesh and his mother Kumari Gurung separately reported the bullying to NIHF staff and pleaded with the Defendants to put a stop to the bullying. Defendants were indifferent, took no action to stop the bullying, and punished Abyesh when he sought help from APS.  Consequently, Abyesh suffered severe anguish, distress, physical injuries, and depression.

Abyesh hanged himself from his bunkbed while serving an out-of-school suspension levied by Akron Public Schools for an incident with one of his bullies that has never been explained to his parents. What is known is this suspension was levied for an incident between Abyesh and one of the students who was repeatedly calling him "Ching Chong" as an Asian slur, a slur documented in Abyesh's educational record as having been directed toward him by this same student on prior occasions with no action taken by APS to stop the bully.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over Plaintiffs' federal civil rights claims pursuant to 28 U.S.C.§§ 1331 and 1343 (3) and (4). This Court has supplemental jurisdiction over Plaintiffs'

related state law claims under 29 U.S.C. §1367(a) because those claims arise out of the same case or controversy as Plaintiffs' federal claims.

2.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because one or more of the Defendants reside within this Court's judicial district and a substantial part of the events or omissions giving rise to the claims occurred within the judicial district.

## PARTIES

3.      Plaintiff, KUMARI GURUNG, is Abyesh Thulung's mother and the administrator of his estate. She sues individually and as the administrator of Abyesh's estate.

4.      Plaintiff, HEM THULUNG is Abyesh's father. He sues individually as the parent of Abyesh Thulung.

5.      Defendant, AKRON PUBLIC SCHOOLS DISTRICT BOARD OF EDUCATION ("APS") is a public entity which, acting under color of law, is responsible for the formulation and implementation of all official governmental laws, policies, regulations and procedures in effect for the Akron Public School District. The School Board is a "person" within the meaning of 42 U.S.C. § 1983 and a political subdivision under the laws of the State of Ohio. Upon information and belief, the School Board receives federal financial assistance.

6.      Defendant, MICHAEL ROBINSON sued in his official capacity, is and was at all relevant times the Superintendent of Akron Public School District. In that capacity, acting under color of law, he holds final policy-making authority for the School District with respect to implementation of all official governmental laws, policies, regulations and procedures governing the APS schools, including enforcement of anti-bullying, anti-harassment, and anti-discrimination policies within the School District. As Superintendent, he has the ability and authority to take corrective action on behalf of the School District to stop bullying, harassment,

4

assault/battery, and discrimination within the District and to discipline perpetrators of such actions. Defendant Robinson is a "person" under 42 U.S.C. §1983 and at all times relevant to this case acted under color of law. Defendant Robinson is sued in his official capacity.

7.     Defendant, AMANDA MORGAN sued in her individual and official capacities, was, at all relevant times, the Principal of NIHF Middle School. In that capacity, acting under color of law, she held final policymaking authority with respect to implementation and enforcement of all official governmental laws, policies, regulations and procedures governing the NIHF Middle School, including implementation and enforcement of anti-bullying, anti-harassment, anti-assault/battery, and anti-discrimination policies within the School District. As Principal, she had the ability and authority to take corrective action on behalf of the School District to stop bullying, harassment, assault/battery, and discrimination within NIHF Middle School and to discipline perpetrators of such actions. Defendant Morgan is a "person" under 42 U.S.C. §1983 and at all times relevant to this case acted under color of law.

8.     Defendant, DENISE BEHARY sued in her individual and official capacities, was, at all relevant times, the Assistant Principal of NIHF Middle School.  In that capacity, acting under color of law, she had the ability and authority to take corrective action on behalf of the School District to stop bullying, harassment, assault/battery, and discrimination within NIHF Middle School and to discipline perpetrators of such actions. Defendant Behary is a "person" under 42 U.S.C. §1983 and at all times relevant to this case acted under color of law.

9.     Defendant, JESSICA FARRELL sued in her individual and official capacities, was, at all relevant times, the Assistant Principal of NIHF Middle School.  In that capacity, acting under color of law, she had the ability and authority to take corrective action on behalf of the School District to stop bullying, harassment, assault/battery, and discrimination within NIHF

Middle School and to discipline perpetrators of such actions. Defendant Ferrell is a "person" under 42 U.S.C. §1983 and at all times relevant to this case acted under color of law.

10. Defendant, SHENEEKA RODGER sued in her individual and official capacities, was, at all relevant times, a full-time employee of NIHF Middle School, serving in the capacity of Guidance Counselor. Defendant Rodger is a "person" under 42 U.S.C. §1983 and at all times relevant to this case acted under color of law.

11. Defendant, KASEY JONES sued in his individual and official capacities, was, at all relevant times, a full-time employee of NIHF Middle School, serving in the capacity of classroom teacher. Defendant Jones is a "person" under 42 U.S.C. §1983 and at all times relevant to this case acted under color of law.

12. Defendant, KALLIE WALKER sued in her individual and official capacities, was, at all relevant times, a full-time employee of NIHF Middle School, serving in the capacity of classroom teacher. Defendant Walker is a "person" under 42 U.S.C. §1983 and at all times relevant to this case acted under color of law.

13. Defendant, LISA WHIDDON, RN sued in her individual and official capacities, was, at all relevant times, a full-time employee or agent of NIHF Middle School, serving in the capacity of nurse. Defendant Whiddon is a "person" under 42 U.S.C. §1983 and at all times relevant to this case acted under color of law.

## **STATEMENT OF FACTS**

14. Abyesh was an Asian-American male who immigrated to the United States in 2012, at the age of 2, with his parents, Hem Thulung and Kumari Gulung, as Bhutanese refugees from Nepal. Abyesh became a United States citizen in 2023, shortly before starting the 5th grade at NIHF Middle School in the Fall of 2023.

15.     Abyesh began his academic journey in the Akron Public Schools at APS' Findlay Community Learning Center, where he did well academically and made the Honor Roll; Abyesh forged new friendships, safe from the Nepali refugee camp that had been established by the United Nations High Commissioner for Refugees when his family was deported by the Bhuthanese government.

16.     These Camps were significantly overpopulated, violence against women and children was rampant, mobility of the refugees was restricted and controlled by the Nepali government, and they were provided very limited access to the justice system.[1] Abyesh's parents struggled to navigate their new freedom in the United States with their inherent fear of government and minimal understanding of the constitutional rights bestowed on them and their children as American citizens.

17.     Abyesh struggled with the English language, with State mandated testing administered on June 22, 2022 placing him at the lowest level on the scale, "Beginning," for his ability to write English and the second lowest level, "Early Intermediate," for his ability to speak English.  Abyesh was designated as "Early Advanced" for his English language listening skills, the second-highest designation.

18.     When Abyesh started 5th grade Kumari was advised he needed English language tutoring twice a week and she agreed to this recommendation on September 7, 2023, although she checked the box on the English Second Language recommendation that she needed someone to explain this recommendation to her in her native language, Nepali.

19.     Abyesh was proud and full of hope when he started his middle school journey at a STEM school, optimism that was systemically and repeatedly destroyed by certain other APS

---

[1] Adelman, Howard (2008). *Protracted Displacement in Asia: No Place to Call Home*. Ashgate Publishing, ISBN 978-0-7546-7238-8.

students when they singled him out for repeated bullying based on his Asian heritage and Nepali/Bhutanese national origin.  There is no dispute APS's own records show the school knew Abyesh was the victim of repeated bullying, discrimination, assault, and harassment at NIHF based on his race and national origin, but did nothing to prevent it.

20.     The ethnic harassment of Abyesh is evident in his APS Office Medical Visit report that shows only three visits to the health clinic for the three academic years Abyesh was in elementary school. In contrast, the NIHF nursing clinic records show Abyesh presented eleven times to the Nurse's office from September until his death in March, 2024.  Four of these visits were for physical injuries Abyesh sustained from assaults at the hands of other students, the other nine visits were for stress-induced maladies of headaches and stomach aches.

21.     Upon information and belief, a female fifth grade NIHF student repeatedly bullied and harassed Abyesh, both verbally and on various social media sites, throughout his fifth-grade year at NIHF, the 2023-2024 school year.

22.     Throughout his fifth-grade year at NIHF, a female fifth grade NIHF student repeatedly called Abyesh "Ching Chong" and, upon information and belief, utilized various social media sites to bully and harass Abyesh as "Chinese" based, inaccurately, on his race and national origin.

23.     Throughout his fifth-grade year at NIHF certain other APS students also repeatedly called Abyesh racial slurs and utilized various social media sites to bully and harass him based on his race and national origin.

24.     This group would ridicule Abyesh and call him "Ching Chong" in class and in the common areas of NIHF and would disparage him on social media because he was Asian.

25. During his fifth-grade year at NIHF Middle School, Abyesh was repeatedly physically attacked by this group; for example, on December 8, 2023, Abyesh was seen in the nurse's office for a bloody nose noted by Defendant Whiddon as having been inflicted by another student. Upon information and belief no investigation was initiated to hold the student(s) accountable who punched Abyesh in the nose, a green light to the bullies that APS would tolerate this conduct when it was directed at Asian students.

26. In January of 2024, during Abyesh's fifth-grade year at NIHF Middle School, his mother Kumari verbally reported Abyesh's bullying to NIHF office staff at an in-person meeting, including the fact he was being called "Ching Chong" as an Asian/national origin slur.

27. NIHF staff, upon information and belief Defendants Morgan, Behary and Ferrell, advised Kumari that APS had zero tolerance for bullying and the school would immediately put a stop to it; no action, however, was ever taken by APS or anyone at NIHF Middle School to stop the bullying, a conscious disregard of Abyesh's constitutional rights by Defendants Morgan, Behary and Ferrell.

28. On February 2, 2024, APS served a detention on Abyesh because he told the school he grabbed the collar of one of the bullies and pulled her out of her seat after she called him Ching Chong in class. Although APS notified Abyesh's family that he received a detention for "fighting," APS deliberately withheld the fact from Kumari that the fight occurred when this student again called her son Ching Chong, the slur they had assured her would be stopped.

29. Abyesh was given another out of school suspension on February 21, 2024 for a fight with one of the bullies that morning in the stairwell, in violation of the procedures enumerated in the APS Anti-Bullying Policy (Anti-Bullying Policy referred to herein as "ABP") to discipline the bully and not the victim. Despite having suffered obvious physical injuries at the hands of other

students no action was taken by Defendants to stop the bullying of Abyesh for being Asian. Upon information and belief APS hid the fact from Abyesh's parents this fight was with one of the bullies because of Abyesh's race and national origin.

30. On March 8, 2024, Abyesh was seen in the NIHF nurse's office for a bloody nose inflicted by one of the bullies. Despite having suffered obvious physical injuries at the hands of other students no action was taken by Defendants to stop the bullying of Abyesh for being Asian. Upon information and belief APS hid the fact from Abyesh's parents this fight was with one of the bullies.

31. On March 11, 2024, Abyesh reported to Defendant Kasey Jones he was being bullied in class; in response, Defendant Jones forced Abyesh to move his seat next to the bullies; when Abyesh objected because those students were bullying him (Abyesh's contemporaneous written explanation to Defendant Jones that morning) – Defendant Jones disregarded Abyesh's pleas, ignored the mandates of the ABP, and forced Abyesh to move his seat next to the bullies.

32. Defendant Jones took it a step further and disciplined Abyesh for reporting he was being bullied by making him complete a "Fifth Grade Better Choices Sheet," a conscious disregard of Abyesh's constitutional rights and well-being by Defendant Jones. In the Better Choices Sheet Abyesh was forced to complete as his punishment, when asked to explain why he objected to moving his seat, Abyesh wrote: "They was bulling. They was masing (sic) around"

33. On March 20, 2024, Abyesh reported to Defendant Kallie Walker he was again bullied and called "Ching Chong" at school by the same student and rather than follow the procedures enumerated in the ABP for when a student reports bullying, Defendant Kallie Walker retaliated against Abyesh and had him suspended from school for two days for complaining about being bullied. APS policy required Kallie Walker to attend the informal hearing that occurred on

2:45 p.m. on March 20, 2024 when she had Abyesh suspended, but there is no documentation she did so; all of these actions by Defendant Kallie Walker were intentional and in violation of Abyesh's constitutional rights.

34.     When this punishment was levied by Defendant Walker, Abyesh cried out that he was going to run away and hurt himself, suicidal ideation Defendant Kallie Walker kept to herself and consciously disregarded to ensure Abyesh was served the out-of-school suspension.

35.     No one from APS or NIHF Middle School contacted Abyesh's parents to warn them Abyesh was expressing suicidal ideation, a conscious disregard of Abyesh's constitutional rights and well-being by the APS Defendants including Kallie Walker.

36.     Abyesh committed suicide the next day, March 21, 2024, while serving the first day of the out-of-school suspension meted out by Defendant Walker in retaliation for Abyesh telling her the other student had again bullied him.

37.     After Abyesh's death social media posts were made by individuals who, upon information and belief, are the same group of APS students that bullied Abyesh at NIHF; these comments included the following statements:  "LMAOOOO IDK HIS NAME BUT HE A 5TH GRADER [laughing emoji]" posted by "Breezy Bri"; "Abyesh someone already did him tho [laughing emoji], posted by "Kaden"; "Abyesh (his fatass wannabe gangster)" posted by "Adainia."  This celebration over Abyesh's death is emblematic of the hatred he endured at NIHF at the hands of these same students, all with full knowledge of the Defendants.

38.     Abyesh's parents had no indication he was suicidal.  In an effort to understand the suffering that drove their son to suicide, the family was able to learn through social media that Abyesh was given the March 20 out of school suspension for fighting with "AC," one of the bullies who routinely called him "Ching Chong" as documented in Abyesh's discipline record.  After her

11

son's death Kumari also learned through social media Abyesh was still being called "Ching Chong" at school and that Defendants had done nothing to prevent the bullying of her son as Defendants Morgan, Behary and Ferrell assured her would happen in January of 2024.

39.     On April 9, 2024 the family requested a copy of Abyesh's complete educational record using a written *Authorization to Release/Receive Education Records and/or Communicate with Outside Agencies/Individuals* served with written correspondence from undersigned counsel to NIHF Middle School; APS did not respond to this letter and no records were produced.

40.     On June 7, 2024, undersigned counsel sent a second letter to Akron Public Schools and repeated the request for Abyesh's complete educational record; in response, a select portion of Abyesh's records were produced by Defendants, but not his complete educational record, with no explanation for the limited production. For example, the "Fifth Grade Better Choices Sheet" wherein Abyesh told Defendant Jones in his own handwriting he was being bullied that morning in class was withheld, with no explanation for why such a key educational record documenting the bulling of Abyesh in class was not provided in response to the family's request for his complete educational record.

41.     On June 25, 2024 undersigned counsel requested a meeting be scheduled by APS with the family to view the video surveillance of the March 20, 2024 incident between Abyesh and the bully "AC" that prompted Defendant Walker to levy the two-day out-of-school suspension on Abyesh.  The family was shocked to learn the school could not share this footage because it had been destroyed by APS, after the school was put on notice that litigation was probable.

42.     On January 10, 2025, the family again requested access to Abyesh's complete educational record including all APS emails that contain the words "Abyesh," "Ching Chong," "bullying," "Chinese," "fatass wannabe gangster," and any other references relevant to this matter.

12

In keeping with their practice of subterfuge, APS has not provided the family access to these educational records.

**Akron Public Schools Covered Up Bullying and Aggressive Behavior at NIHF**

43.    The Summit County, Ohio Public Health Department's *Youth Risk Behavior Survey - Middle School (YRBS), 2023* was conducted in the Fall of 2023 and revealed 38% of Summit County middle school students reported experiencing bullying in the prior 12 months and a startling 7% of these middle school students attempted suicide in the prior 12 months. [2]  This data shows that of the 4,268 students who responded to the survey 300 had attempted suicide.

44.    Ohio Revised Code 3313.666 requires APS to establish policies that assist school personnel to identify and address issues of bullying, intimidation and harassment that occurs between students.

45.    ORC 3313.666(B)(5) further requires APS to notify the custodial parent or guardian of bullying incidents involving their child.

46.    ORC 3313.666(B)(11) requires APS administration to semiannually provide the president of the district board a written summary of all reported incidents of harassment, intimidation, or bullying and post the summary on the district's website.

47.    APS failed to fulfill its statutory duty under ORC 3313.666(B)(11) as it did not post the summary of bullying incidents for (a) the Spring semester of 2023, when the Thulung family was considering whether to send Abyesh to NIHF; (b) for the Fall semester of 2023 when the Thulung family decided to send Abyesh to NIHF; and (c) for the Spring semester of the 2024 school year.

---

[2] *Youth Risk Behavior Survey - Middle School (YRBS), 2023*, Summit County Public Health Department.

48.     Defendant's affirmative steps to hide the number of bullying incidents at APS from the community was done at the expense of Akron families like the Thulung's who are trying to protect their children from being bullied and reflects APS' wide-spread pattern and practice of hiding bullying from the community.

49.     This practice was further evidenced by APS conduct when it completely ignored the Thulung family's request for Abyesh's complete educational record, produced only select portions of his record when APS was pushed to do so by undersigned counsel, and destroyed the March 20, 2024 video footage of the culminating event that led to Abyesh's suicide after APS learned the family had retained counsel.

50.     Upon information and belief the summaries required by ORC 3313.666(B)(11) for the Spring semester of 2023, the Fall semester of 2023, and the Spring semester of the 2024 school year were posted on the District's website in late 2024, long after Abyesh's bullying and death during the 2023/2024 school year. There are nine APS middle schools and the ORC 3313.666(B)(11) report shows three of the middle schools did not have any incidents of bullying; the other six middle schools reported 31 bullying incidents, with 5 reported at NIHF.

51.     Had APS fulfilled its statutory duty the Thulung's and all other Akron families with minority children making school choices would have been able to make an informed decision as to whether the learning environment at NIHF or any APS school was positive for their child or rife with aggressive behavior between different student factions. Had APS not hid the bullying from the community the Thulung family would have known: (a) aggressive behavior was rampant at NIHF, (b) it was not safe to send Abyesh to NIHF, and (c) that a different APS school where bullying was not condoned was a safer school for their son to attend.

52.    Plaintiffs requested APS identify the date the summaries required by ORC 3313.666(B)(11) for the 2023 and 2024 school years were posted on the District's website, but that information has never been provided.

**Akron Public School's Failure to Follow its Own Anti-Bullying Policy**

53.    Akron Public Schools' Anti-Bullying Policy and Board of Education Bylaws and Policies 5517.01 – Bullying and Other Forms of Aggressive Behavior are written as a series of mandatory duties that district employees must fulfill in response to the bullying of students.

54.    The ABP specifies the duty APS owed Abyesh:

> All complaints about aggressive behavior that may violate this policy shall be promptly investigated. The building principal or appropriate administrator shall prepare a written report of the investigation upon completion. Such report shall include findings of fact; a determination of whether acts of harassment, intimidation and/or bullying were verified; and, when prohibited acts are verified, a recommendation for intervention, including disciplinary action shall be included in the report. Where appropriate, written witness statements shall be attached to the report.

55.    The ABP further states: "Harassment, intimidation or bullying toward a student – whether by other students, staff or third parties – is strictly prohibited and will not be tolerated."

56.    The ABP provides the following definition of bullying:

> Harassment, intimidation or bullying means:
>
> A. any intentional written, verbal, electronic or physical act that a student or group of students exhibits toward another particular student(s) more than once and the behavior both causes mental or physical harm to the other student(s) and is sufficiently severe, persistent or pervasive that it creates an intimidating, threatening or abusive educational environment for the other student(s);

57.    Under the ABP, "every staff member is required, to report any situation that they believe to be aggressive behavior directed toward a student."  Abyesh was regularly bullied at NIHF but not a single APS staff member reported his bullying as the policy required.

15

58.     The ABP specifies "all complaints about aggressive behavior that may violate this policy shall be promptly investigated. The building principal or appropriate administrator shall prepare a written report of the investigation upon completion. Such report shall include findings of fact; a determination of whether acts of harassment, intimidation and/or bullying were verified; and, when prohibited acts are verified, a recommendation for intervention, including disciplinary action shall be included in the report."

59.     APS knew Abyesh was being bullied at NIHF but no investigation was ever initiated, let alone promptly as the ABP required, and no written report has ever been produced regarding the bullying of Abyesh at NIHF. The ABP is replete with mandatory "shall" language that was consciously disregarded by APS staff. Had APS followed its own anti-bullying policy a recommendation for intervention would have occurred, including disciplinary action against the bullies, that would have put a stop to the bullying and prevented Abyesh's wrongful death.  That did not happen.

60.     When Defendants chose to not prevent the daily bullying of Abyesh, this action by APS encouraged bullying, violence, and aggression to become rampant at NIHF to the point where it was accepted as normal treatment of Asian students.  This policy allowed aggressors to bully other students without consequences; it fostered a culture of retaliation against the victims of Asian bullying when they sought help; it purposefully misled parents about the violence their children faced at school; and it purposefully deceived the community about how rampant bullying was at NIHF.  APS has established a pattern and practice of covering up the aggressive behavior and violence occurring daily at NIHF against those who are most vulnerable, immigrant students who are singled out for harassment because of racial or national origin.

61.     Abyesh's death was foreseeable in the toxic educational environment APS permitted to occur at NIHF when it failed to prevent the bullying of students based on their race and national origin that they knew was occurring at school.

62.     Pursuant to the ABP, "If a student or other individual believes there has been aggressive behavior, regardless of whether it fits a particular definition, s/he should report it and allow the administration to determine the appropriate course of action. The District shall implement intervention strategies (AG 5517.01) to protect a victim or other person from new or additional harassment, intimidation or bullying and from retaliation following such a report."

63.     Verified acts of bullying, and any discipline imposed, must be reported in writing to the victim's custodial parent/guardian and the bully's custodial parent/ guardian.

64.     Strategies to protect against continued harassment are supposed to be developed.

65.     District administrators and employees are subject to disciplinary action for failure to abide by the District's Anti-Bullying Policy.

66.     When Abyesh complained of bullying or harassment or intimidation, Defendants APS and Robinson did not ensure that APS policies were followed, did not investigate the incidents, did not discipline the bullies, did not take action to notify Abyesh's parents, and did not report his bullying. Defendants APS and Robinson acted in a wanton, willful, and reckless manner in disregard of Abyesh's safety.

67.     APS Defendants knew that middle school students were in their custody; these students, including Abyesh, could not protect themselves.  Defendants knew that by withholding vital information from parents and custodians about the risk of harm students faced at NIHF and by covering up any aggressive behavior students witnessed and experienced, they prohibited parents, including Abyesh's parents, from being able to protect their own children.

68.     APS did not adequately train NIHF staff or students on how to identify, report, or investigate bullying, violence, aggression, intimidation, or harassment.

69.     APS Defendants did not adequately supervise NIHF staff to ensure staff was complying with their legal obligations or APS' policies to identify, report, and investigate bullying, violence, aggression, intimidation, or harassment.

70.     The surveillance cameras at APS lured students like Abyesh into a false sense of security that they were safe in areas like stairwells where there was no adult supervision. APS did not utilize these surveillance cameras to deter, monitor, report, or investigate bullying at NIHF. Instead, APS Defendants' use of surveillance cameras encouraged aggressive behavior in areas like stairwells as the perpetrators knew their actions, though recorded by surveillance cameras would be disregarded and go unpunished.

71.     Upon information and belief, no investigation was ever undertaken, no written report was ever prepared, no written notice was ever provided to Abyesh's parents of the verified acts of bullying, and no strategies were implemented to protect against the continued harassment of Abyesh as the ABP required and Defendants Morgan, Behary, and Ferrell promised Kumari would occur.

72.     Defendants violated their own Anti-Bullying Policy as detailed throughout this Complaint in violation of Abyesh's constitutional rights.

### APS's Failure to Follow its Own Code of Student Behavior

73.     Defendants' Code of Student Behavior forbids all APS pupils from Bullying / Harassment / Hazing / Intimidation of another student based on his/her Race, Color or National Origin.

74.     The Code defines racial harassment as "any intentional written, graphic, verbal or physical act that a student has exhibited toward another student based on race, color, or national origin, more than once, such that the behavior both causes mental or physical harm to the other student is sufficiently severe, persistent, or pervasive that it creates and intimidating, threatening, or abusive educational environment for the other student."

75.     Per District policy, because Abyesh was subjected to bullying, harassment, hazing, and intimidation because of his race, color, and national origin, it was a Level III Offense under the Student Behavior Code and required the bullies receive <u>a mandatory out of school suspension</u> of 1-10 days and <u>mandatory recommendation for expulsion</u> of  the student(s) bullying him.  Had any one of Abyesh's bullies been served with a mandatory recommendation for expulsion when they repeatedly called him "Ching Chong" or other Asian slur, as the Student Code of Behavior required, it would have prevented his continued bullying and his wrongful death.  APS did nothing to prevent Abyesh's bullying and his death was foreseeable.

76.     Upon information and belief none of Abyesh's bullies have ever been disciplined by APS.

77.     Defendants violated their own Racial/National Origin Harassment Student Code of Behavior as detailed throughout this Complaint.

**<u>Defendants' Pattern and Practice of Failing to Properly Respond to Reports of Bullying, Harassment, and Discrimination</u>**

78.     In addition to Abyesh Thulung, other APS students of Nepali/Bhutanese race/origin were also bullied, harassed and discriminated against, with actual knowledge of the Defendants, and Defendants failed to appropriately respond to end those practices and protect the victims.

79.     Defendants thereby engaged in a pattern and practice of failing to properly respond to incidents of bullying, harassment, and discrimination.

19

**Bullying Leads to Suicide in Children**

80.     Many studies have established a connection between bullying and suicide in children, a phenomenon referred to as "bullycide." These studies have found that bullying is a significant contributor to suicidal ideation.[3]

81.     Frequent physical assault like Abyesh was subjected to at school is also associated with increased odds of suicidal ideation.[4]

82.     Research is clear that "there is an increased risk of suicidal ideation and/or suicide attempts associated with bullying behavior."[5]

83.     As educators, Defendants were well aware of the link between bullying and suicide in school children when Abyesh sought out their protection but was met with deliberate indifference and punishment for reporting it.

**Defendants Were Deliberately Indifferent to the Risk of Harm and Breached Their Duty to Protect APS Students from Bullying**

84.     Defendants knew of the risk of bullying and aggressive behavior on APS students, including the risk of suicide and received training on the links between aggressive behavior, violence, and bullying at school to children committing suicide at home.

85.     Defendants knew bullying and aggressive behavior occurred at NIHF during Abyesh's enrollment and that this bullying and aggressive behavior was directed at Abyesh by other students.

86.     To address the known risk of a student committing suicide because of bullying at school, APS offers a Pupil Adjustment Program ("PAP") described by APS "as a collaborative

---

[3] Suicidal ideation among suburban adolescents:  The influence of school bullying and other mediating risk factors. J. Child Adolesc. Ment. Health, 2016 Oct.; 28(3): 213-231.
[4] Associations of childhood bullying victimization with lifetime suicidal behaviors among new US Army soldiers. Depress Anxiety, 2017 April 3.
[5] The Association of Suicide and Bullying in Children to Young Adulthood:  A Review of Cross-Sectional and Longitudinal Research findings.

initiative within the Akron Public Schools departments of Student and Family Services and Office of Special Education to provide comprehensive psycho-educational services to students, families and district personnel across consultation, evaluation and professional development roles to oversee individual child risk assessment in situations involving child maltreatment, suicide and threats."

87.    Defendants Morgan, Behary, Farrell, Rodger, Jones, Walker, and Whiddon were deliberately indifferent to the bullying of Abyesh when they chose to not get him help through the PAP program despite their knowledge he was the victim of repeated maltreatment and threats by other APS students to the point he expressed suicidal ideation to Defendant Walker, went home, and hanged himself from his bunkbed on the first day of his out-of-school suspension.

### COUNT I
### §1983 State Created Danger

88.    Defendants have, under color or law, deprived Abyesh Thulung and Plaintiffs of rights, privileges, and immunities secured to them by the United States Constitution including the right to due process under the Fourteenth Amendment, and specifically the right to be free from affirmative actions directly increasing Abyesh Thulung's vulnerability or otherwise placing him in danger and taking away from his parents their ability to protect him.

89.    The actions of all Defendants constitute a violation of Abyesh Thulung's and Plaintiffs' constitutional rights under the Substantive Due Process Clause of the Fourteenth Amendment.

90.    These rights include Abyesh's right to life, liberty, familial relationship, education, and freedom from government actions that shock the conscience, as well as the right of Kumari Gurung and Hem Thulung to the familial relationship, companionship, care, custody and management of their child, including the right to control his education.

91.     Defendants had actual knowledge that the bullying, harassment, assault/ battery, and discrimination Abyesh suffered was so severe that it deprived Abyesh of the rights, privileges, or immunities secured by the Substantive Due Process Clause of the Fourteenth Amendment.

92.     Defendants had sufficient time to deliberate and decide upon a proper course of action to the bullying and other wrongs suffered by Abyesh. Defendants were not required to act in haste.

93.     Defendants' actions and omissions, in failing to intervene on behalf of Abyesh Thulung, were so reprehensible that it is shocking to the conscience and violative of Abyesh's substantive due process rights and those of Plaintiffs.

94.     The actual practices, policies, or customs of Defendants for responding to such bullying, harassment, assault/battery, and discrimination were so clearly unreasonable in light of known circumstances as to give rise to a reasonable inference that each of the Defendants intended for these events to occur, or were deliberately and callously indifferent to their occurrence, or were grossly negligent or reckless in permitting them to occur.

95.     The affirmative acts and the omissions of the Defendants created a risk and/or increased the risk that Abyesh Thulung would be exposed to bullying, harassment, assault/battery, and discrimination by other APS students including the affirmative act by Defendant Jones when he forced Abyesh to move his seat next to the bullies and the affirmative act by Defendant Jones when he punished Abyesh with a written assignment for his plea to not be moved closer to the bullies.

96.     Had Defendant Jones not forced Abyesh to move his seat next to the bullies Abyesh would not have been exposed to the bullying, harassment, violent assault/battery, and racial/ethnic

discrimination by certain other APS students occurring in Defendant Jones' class and elsewhere at APS.

97. Because Abyesh faced special and specific dangers of being bullied, harassed, assaulted/battered, and discriminated against by certain APS students, Defendants actions and omissions created a risk and placed Abyesh specifically at risk for bullying as he was moved closer to them in class by Defendant Jones, despite objection by Abyesh, when the school knew these students were calling Abyesh "Ching Chong" and other Asian racial slurs.

98. Defendants knew or should have known that their actions and omissions created a danger and/or specifically endangered Abyesh Thulung, including without limitation:

> a. the repeated decisions of Defendants to hide information from the Thulungs about the bullying, harassment and batteries against Abyesh;
>
> b. their repeated failure to complete mandatory reports regarding the bullying of Abyesh;
>
> c. the affirmative act of forcing Abyesh to sit with his bullies in Defendant Jones' class despite Abyesh's objection and plea to not be moved next to those students who were bulling him, as documented in the Fifth Grade Better Choices Sheet;
>
> d. their repeated refusals to investigate or discipline Abyesh's bullies, or at least separate Abyesh from the bullies to protect him from them, despite knowledge of the bullies' identities, despite requests from Abyesh and Kumari Thulung that the school stop Abyesh's bullying, and despite Defendants' actual knowledge that Abyesh was being bullied.

99. The practices, policies, or customs of Defendants have substantially contributed to and exacerbated an environment in which it was customary for students such as Abyesh and other Asian students to be bullied, harassed, assaulted/battered, and discriminated against.

100. Even when students reported the bullying, asked for help, became desperate and threatened suicide, Defendants persisted in their custom of failing to take effective action, thereby acquiescing in the wrongful conduct.

101. Defendants also:

    a. Failed to enforce Defendants' anti-bullying, anti-harassment, and anti-discrimination policies;

    b. failed to adequately train and/or negligently trained School District staff regarding said those policies, and about proper methods of responding to such events;

    c. failed to properly oversee, supervise, and discipline staff in carrying out their duties under these policies; and

    d. failed to adopt, and/or implement adequate policies and procedures regarding bullying, harassment, assault/battery, and racial/national origin discrimination necessary to prevent the constitutional violations suffered by Abyesh Thulung.

102. Defendants' actions and omissions reflect their toleration of a widespread policy, practice or custom of failing to adequately respond to bullying, harassment and assault/battery so as to safeguard the constitutionally protected rights of students.

103. This policy, practice or custom affirmatively, directly, and proximately caused the violation and denial of Abyesh's constitutional rights by forcing him over his objection to sit with other NIHF students whom APS knew were bullying Abyesh because of his national origin.

104. Defendants' deliberate indifference put Abyesh's life at risk and caused him to suffer greatly before his death. Defendants acted with deliberate indifference when they concealed from Abyesh's parents the dangers he faced at school, causing them serious emotional distress when they could not protect their son.

105. Plaintiffs have been damaged, including without limitation the wrongful death of Abyesh as well as extreme emotional pain, suffering, and loss of companionship of their son.

## COUNT II
### §1983 Shocks the Conscience

24

106.    Defendants have, under color or law, deprived Abyesh Thulung and Plaintiffs of rights, privileges, and immunities secured to them by the United States Constitution including the right to due process under the Fourteenth Amendment, and specifically to the right to be free from government actions that shocks the conscience.

107.    Defendants' actions put Abyesh Thulung's life at risk and caused him to suffer greatly before his death, the source/origin of which was personal physical injury.  Defendants acted with deliberate indifference when they concealed from his parents the actual danger Abyesh Thulung was in at NIHF; affirmatively misrepresented his physical injuries as not inflicted by the NIHF students the school knew were calling him "Ching Chong;" destroyed the video surveillance footage of the bullying incident that led to Abyesh's out-of-school suspension and suicide after APS learned the family had retained counsel; and, levying an out-of-school suspension on Abyesh when he reported he was being called "Ching Chong" to Defendant Walker; these actions all shock the conscious and caused serious emotional distress to Abyesh's parents when they could not protect him.

## COUNT IV

**Violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.**
**Discrimination on the Basis of National Origin**

108.    Upon information and belief, APS, the School District and the School Board, and NIHF are recipients of federal financial assistance.

109.    The acts and omissions of Defendants APS, which include acts and omissions of School District officials and employees, violated Abyesh Thulung's rights under Title VI by discriminating against him on the basis of race (Asian) and/or national origin (Nepali/Bhutanese).

110.    Defendants had actual notice that the bullying and harassment of Abyesh was based on race and/or national origin and was so severe, pervasive, and objectively offensive that it created

25

a hostile climate based on race and/or national origin that deprived Abyesh Thulung of access to federally funded educational programs, activities, and opportunities.

111. Defendants, including policymakers, officials, and other School District employees, exhibited deliberate indifference to the bullying, harassment and discrimination against Abyesh Thulung based on race and/or national origin in violation of Title VI.

112. Through their unlawful and intentional deliberate indifference, Defendants caused Abyesh Thulung to be subjected to the above-described race and/or national origin discrimination.

113. Defendants' violations of Title VI were the actual, direct, and proximate cause of the injuries and wrongful death suffered by Abyesh Thulung. As a direct and proximate result of the actions and conduct of Defendants, Plaintiffs have suffered and continue to suffer extreme emotional distress and loss of the care and companionship of their son Abyesh.

### COUNT V
**Unlawful Policy, Practice, or Custom in Failing to Respond to Bullying, Harassment, and Assault/Battery**
**(*Monell v. Dept. of Social Services*, 436 U.S. 658 (1978))**

114. Defendants violated their obligations to maintain lawful policies and procedures pursuant to *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978), and also pursuant to R.C. § 2307.44, § 3313.666(B), and § 3313.534.

115. Defendants' actions and omissions reflect their toleration of a widespread policy, practice or custom of failing to adequately respond and/or negligently responding to bullying, harassment and assault/battery so as to safeguard the constitutionally protected rights of students.

116. This policy, practice or custom condoned, fostered, encouraged, acquiesced in and tacitly approved of the unconstitutional response, and lack of response, of Defendants to bullying, harassment, and assault/battery taking place in the APS schools.

117.    This policy, practice or custom was the moving force behind the violations of Abyesh's constitutional and federally protected rights.

118.    Defendants were deliberately and callously indifferent, or grossly negligent or reckless with regard to this deprivation of Abyesh's constitutional and federally protected rights.

119.    Defendants' unlawful policy, practice or custom was also evident by their deliberate indifference in:

    a.  The actions taken by officials with final decision-making authority, including without limitation;

        i.  the repeated decisions of Defendants to hide information from the Thulung's about bullying, harassment and batteries against Abyesh;

        ii.  their repeated failure to complete mandated reports regarding the bullying of Abyesh; and

        iii.  their repeated refusals to investigate or discipline Abyesh's bullies, or at least separate Abyesh from the bullies and protect him from them, despite knowledge of the bullies' identities, despite requests from Abyesh and Kumari Thulung that the school put a stop to Abyesh's bullying, and despite Defendants' actual knowledge that Abyesh was being bullied.

    b.  Failing to properly train, oversee, supervise, and discipline their officials and teachers in proper methods of responding to bullying, harassment, and assault/battery, and/or negligently performing these responsibilities.

    c.  The training and supervision was obviously and clearly inadequate and/or negligent, especially given the conduct of administrators and teachers described in the Complaint, including without limitation:

        i.  their failure to report incidents of bullying, harassment and assault / battery to their superiors or complete reports on the same; their failure to communicate with each other and comprehend that Abyesh's falling grades and out-of-character behavior was related to the bullying he was suffering;

ii.     Defendant Jones intentionally forced Abyesh to sit amongst his tormentors over Abyesh's pleas to not be moved amongst them, despite the school's knowledge they were bullying him;

iii.    the failure of the school to offer Abyesh counseling and/or take interventionist measures after he repeatedly showed up with physical injuries at the nurses' station.

iv.     the failure of teachers to report the bullying of Abyesh happening in the classroom;

v.      the failure of Principal Morgan, Assistant Principal Behary, and Assistant Principal Ferrell to personally intervene and end the bullying despite direct personal knowledge of the bullying and batteries being committed against Abyesh at school.

d.  Failing to follow their own anti-bullying policies, as described herein,

e.  Failing to maintain, adopt, and/or implement policies and procedures regarding bullying, harassment and assault/battery necessary to prevent the constitutional violations suffered by Abyesh;

f.  Failing to maintain files on bullies/harassers, and the failure to institute a tracking system for bullying, harassment, and assault/battery incidents.

120.    Defendants' conduct was part of a pattern and practice in which Defendants failed to protect APS students from bullying, harassment, and assault/ battery, as evidenced by the high number of bullying complaints at APS schools.

121.    Before Abyesh's death, Defendants were clearly on notice, and knew or should have known of their own prior constitutional violations as well as those of other APS employees, including without limitation the failure to protect Abyesh Thulung and other Asian students from bullying, harassment and assault/battery based on their ethnicity and national origin, and the consequent harm suffered by those students.

122.    Defendants were deliberately indifferent and knew or should have known that these violations reflected the toleration of a widespread policy, practice or custom of failing to

adequately respond to bullying, harassment, and assault/battery so as to safeguard the constitutionally protected rights of students, the failure to adopt and/or implement adequate policies, and deficient/negligent training, oversight, supervision, and discipline.

123.    Defendants were deliberately indifferent and it was foreseeable that their failure to take action to prevent Asian bullying was likely to cause injury to these students and actually caused the injury and death of Abyesh Thulung.

124.    As a direct and proximate result of the conduct of Defendants, Abyesh Thulung and Plaintiffs have suffered the deprivation of their constitutional rights, and Plaintiffs have suffered extreme emotional distress and loss of companionship.

**COUNT VI**

**Unlawful Policy, Practice, or Custom in Failing to Respond to**
**Race/National Origin Discrimination**
(***Monell v. Dept. of Social Services*, 436 U.S. 658 (1978)**)

125.    Defendants violated their obligations to maintain lawful policies and procedures pursuant to *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978), and also pursuant to R.C. § 2307.44, § 3313.666(B), and § 3313.534.

126.    Defendants' conduct, described throughout the Complaint, reflects their toleration of a widespread policy, practice or custom of failing to adequately respond to race/national origin discrimination so as to safeguard the constitutionally protected rights of students.

127.    This policy, practice or custom condoned, fostered, encouraged, acquiesced in and tacitly approved of the unconstitutional response, and lack of response, of Defendants to race/national origin discrimination taking place in FIS and FMS.

128.    This policy, practice or custom was the moving force behind the violations of Abyesh's constitutional and federally protected rights.

129.     Defendants were deliberately and callously indifferent, or grossly negligent or reckless with regard to this deprivation of Abyesh's constitutional and federally protected rights.

130.     Defendants' unlawful policy, practice or custom was also evident by their deliberate indifference in:

    a.   the actions taken by officials with final decision-making authority;

    b.   failing to properly train, oversee, supervise, and discipline their officials and teachers in proper methods of responding to race/national origin discrimination, and/or negligently performing these responsibilities;

    c.   failing to follow their own race/national origin discrimination policies;

    d.   failing to maintain, adopt, and/or implement policies and procedures regarding race/national origin discrimination and harassment necessary to prevent the constitutional violations suffered by Abyesh Thulung;

    e.   failing to maintain files on discriminators/harassers, and the failing to institute a tracking system for such incidents.

131.     Defendants' actions and omissions were part of a pattern and practice in which Defendants failed to protect APS students from race/national origin discrimination, as evidenced by Defendants' failure to protect Abyesh Thulung.

132.     Before Abyesh's death, Defendants were clearly on notice, and knew or should have known of prior constitutional violations, including without limitation the failure to protect Abyesh Thulung from race/national origin discrimination.

133.     Defendants knew or should have known that these violations reflected the toleration of a widespread policy, practice or custom of failing to adequately respond to race/national origin discrimination so as to safeguard the constitutionally protected rights of students, the failure to adopt and/or implement adequate policies, and deficient/negligent training, oversight, supervision, and discipline.

134.    Defendants knew or should have known that these actions and omissions were likely to cause injury to students, and actually caused injury to students including the wrongful death of Abyesh Thulung.

135.    As a direct and proximate result of the actions and conduct of Defendants, Abyesh Thulung and Plaintiffs have suffered the deprivation of their constitutional rights, and Plaintiffs have suffered extreme emotional distress and loss of companionship.

### COUNT VII
### Violation of U.S. Constitution Amendment XIV, Denial of Equal Protection on the Basis of Race and/or National Origin

136.    The Defendants, acting under color of state law, have deprived Abyesh Thulung of the rights, privileges, or immunities secured by the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, in that Defendants, without justification, have intentionally discriminated against Abyesh Thulung on the basis of his race and/or national origin.

137.    Defendants had actual and/or constructive knowledge that bullying, harassment and discrimination based on race and/or national origin was so severe, pervasive, and objectively offensive that it created a hostile climate that deprived Abyesh Thulung of access to educational programs, activities, and opportunities.

138.    The practices, policies, or customs of Defendants and their policymakers for responding to such bullying, discrimination and harassment based on race and/or national origin were so clearly unreasonable in light of the known circumstances as to give rise to a reasonable inference that each of the Defendants named in this claim intended for the bullying, discrimination and harassment to occur.

139.    The practices, policies, or customs of the Defendants and their policymakers for responding to such bullying, discrimination and harassment based on race and/or national origin

substantially contributed to a continuing, widespread, and persistent pattern of misconduct in responding to and/or failing to respond to such acts.

140. The practices, policies, or customs of the Defendants and their policymakers have substantially contributed to the creation of a pervasive anti-Asian climate in APS schools and exacerbated the epidemic of anti-Asian harassment in APS schools.

141. Defendants also failed to adequately train and/or negligently trained School District staff about policies prohibiting bullying, harassment and discrimination on the basis of race and/or national origin, as specified throughout the Complaint.

142. These Defendants' failure to train and/or negligent training caused Abyesh Thulung to be subjected to bullying, discrimination and harassment on the basis of race and/or national origin.

143. Defendants, as officials with supervisory responsibilities, also implicitly authorized, approved of, or knowingly acquiesced in the unconstitutional conduct of subordinates in failing to properly respond to bullying, harassment and discrimination on the basis of race and/or national origin directed against Abyesh Thulung, and thereby acted with deliberate indifference to the violation of Abyesh's rights.

144. The violations of Abyesh Thulung's rights under the Fourteenth Amendment by each of the Defendants named in this claim were the actual, direct, and proximate cause of injuries suffered by Abyesh Thulung and Plaintiffs as alleged.

145. Plaintiffs request judgment in their favor against each of the Defendants named in this claim, as set forth below.

## COUNT VIII
### Negligence / Gross Negligence

146. The actions of all Defendants in: (a) permitting the bullying, harassing, assaulting, battering and discriminating against Abyesh Thulung; and in (b) failing to properly respond to the bullying, assault/battery, harassment, and discrimination against Abyesh, despite their actual and constructive knowledge of these events, and their directly witnessing physical, verbal and other forms of bullying and abuse against Abyesh, constitute negligence, recklessness, and/or gross negligence under Ohio law.

147. The Defendants' negligence, recklessness, and gross negligence includes without limitation: failing to follow federal and Ohio law; failing to follow their own anti-bullying policies, as specified above; failing to follow their own Student Code of Behavior, as specified above; failing to investigate and end the bullying of Abyesh, as promised to Kumari; failing to identify and discipline the bullies of Abyesh; failing to report bullying incidents to the school administration; and failing to inform the Thulung family about the bullying of their son and violent attacks on him at APS that was within the school's actual knowledge.

148. The Defendants' negligence, recklessness, and gross negligence includes without limitation their failure to create and implement policies necessary for the government of their schools and pupils, as required by R.C. § 3313.20.

149. Defendants' recklessness and gross negligence also includes its violations of Ohio's Anti-Bullying statute, Ohio Revised Code § 3313.666. These violations include without limitation: (a) failure to document incidents of bullying and harassment against Abyesh in writing and notify the Thulung family of the incidents; (b) failure to use intervention strategies for

protecting Abyesh from continued bullying, harassment or retaliation; (c) failure to use interventions or disciplinary procedures for the bullies/harassers of Abyesh.

150.     Defendant Sheeneka Rodger's negligence, recklessness, and gross negligence includes her failure to offer counseling and/or adequate counseling to Abyesh Thulung despite requests for counseling from Kumari Gurung, despite her knowledge of the bullying and other wrongs suffered by Abyesh at NIHF, including her knowledge that APS student/students regularly called Abyesh "Ching Chong" and other Asian slurs.

151.     Defendant Lisa Whiddon, RN breached the standard of care for a school nurse and her negligence, recklessness, and gross negligence each time Abyesh presented to the nurses' station with physical injuries, with actual knowledge Abyesh was being bullied and assaulted during the school day at NIHF.

152.     The actions of all Defendants constitute malicious purpose, bad faith and wanton and reckless conduct in violation of Ohio Revised Code Section 2744.03(A)(6).

153.     As a direct result of the actions and conduct of Defendants, Plaintiffs have been damaged including the wrongful death of Abyesh and extreme emotional distress and loss of his companionship.

<u>**COUNT IX**</u>
**Wrongful Death**

154.     Plaintiff Kumari Gurung bring this wrongful death claim as administrator of the Estate of Abyesh Thulung for the exclusive benefit of the parents of Abyesh, and as parents and next friends of his minor brother and sister.

155.     Abyesh's resort to self-harm and suicide was foreseeable as Defendants were aware he was being bullied and called things like "Ching Chong" at school as described herein, but APS did nothing to prevent the bullying, which continued unchecked by any APS Defendant and was

the direct and proximate cause of Abyesh's death that would have entitled Abyesh to maintain an action against Defendants and recover damages if his death had not ensued.

156.   Abyesh left no surviving spouse and is survived by his grandparents, parents, Hem Thulung and Kumari Gurung and his minor brother and sister, all of whom are the beneficiaries of this action.

157.   Plaintiffs Hem Thulung and Kumari Gurung and his grandparents, minor brother, and sister, have all suffered damages as a result of Defendants' negligence and neglect, including without limitation: loss of services, loss of society including loss of companionship, care, assistance, and attention, mental anguish, and funeral and burial expenses.

## COUNT X
### Breach of Duty of Care and Supervision

158.   Abyesh Thulung was at all relevant times under the care, custody, control and supervision of Defendants, and was in fact compelled by the laws of the State of Ohio to attend school and submit to the care, custody, and control of school authorities.

159.   Defendants had a duty to care for, protect, supervise, support and control their students; to exercise a duty of reasonable care *in loco parentis*; and to avoid creating a substantial risk to the health or safety of their students either by action or omission.

160.   The foregoing duties are established by the common law of Ohio, as well as by Ohio R.C. §§ 2151.03, 2919.22, 3313.20, 3313.666, 2307.44, 3313.666(B), 2151.421, and 3313.534.

161.   Defendants also entered into a special relationship, and assumed a heightened duty of care by promising and agreeing, with Abyesh and the Thulungs that they would exercise added vigilance over Abyesh, ensure that he was protected, and offer him support, guidance, and counseling.

35

162.     The actions of Defendants, as enumerated in this Complaint, constitute a violation of the aforementioned duties.

163.     The actions and omissions of all Defendants constitute malicious purpose, bad faith and wanton and reckless conduct in violation of Ohio Revised Code Section 2744.03(A)(6).

164.     As a direct result of the actions and conduct of Defendants, Plaintiffs have been damaged including extreme emotional distress and loss of companionship of Abyesh.

### COUNT XI
### Intentional Infliction of Emotional Distress

165.     Defendants either intended to cause emotional distress to Abyesh Thulung and Plaintiffs, or knew or should have known that their actions and omissions would result in serious emotional distress to Abyesh Thulung and Plaintiffs.

166.     Defendants' actions and omissions in failing to take appropriate action against the bullies of Abyesh were extreme and outrageous.

167.     Defendants' actions and omissions directly and proximately caused extreme emotional distress and mental/psychological/emotional harm to Abyesh Thulung, Kumari Gurung, Hem Thulung, his grandparents, and their two minor children.

168.     As a direct and proximate result of Defendants' actions and omissions, Kumari Gurung, Hem Thulung, his grandparents, and their children require extensive medical counseling due to the loss of their son and brother and the ongoing public scrutiny of his death.

169.     As a direct and proximate result of Defendants' conduct Plaintiffs have been damaged.

## COUNT XII
### Negligent Infliction of Emotional Distress

170.     Defendants' actions and omissions in failing to take appropriate action against the bullies of Abyesh, proximately and foreseeably led to Abyesh's wrongful death, and thereby caused mental anguish to Plaintiffs.

171.     Plaintiffs also discovered and observed Abyesh's body on the day of his death, resulting in shock from the direct emotional impact of this discovery and observation.

172.     As a direct and proximate result of Defendants' acts and omissions, Plaintiffs have been damaged.

## COUNT XIII
### Violation of R.C. § 2307.44
### Hazing / Bullying

173.     Abyesh Thulung was subjected to hazing, bullying, intimidation and harassment as a student at APS during school hours and during school sanctioned events.

174.     Defendants had a mandatory duty to create and enforce anti-bullying, anti-hazing, and anti-harassment standards pursuant to Ohio R.C. § 2307.44, § 3313.666(B), and § 3313.534.

175.     Defendants failed to create and enforce such standards, as described above.

176.     As a direct result of Defendants' actions and omissions, Abyesh Thulung suffered mental and physical pain and suffering, and Plaintiffs suffered mental pain and suffering, and have thus been damaged.

## COUNT XIV
### Violation of R.C. § 2151.421
### Failure to Report Child Abuse

177.　Defendants, acting in an official or professional capacity, knew or had reasonable cause to suspect that Abyesh suffered or faced a threat of suffering a physical or mental wound, injury, or disability, to wit: that Abyesh had been physically assaulted/ battered, bullied, harassed and discriminated against, that he was likely to physically harm himself and was a risk to commit suicide, among other things.

178.　Pursuant to Ohio R.C. § 2151.421, Defendants had a duty to report that they knew or had reasonable cause to suspect that Abyesh suffered or faced a threat of suffering a physical or mental wound, injury, or disability.

179.　Defendants breached their duty when they failed to report as required by Ohio R.C. § 2151.421.

180.　As a direct and proximate result of Defendants' actions and omissions, Abyesh Thulung suffered mental and physical pain and suffering, and Plaintiffs suffered mental pain and suffering, and have thus been damaged.

## COUNT XV
### Loss of Consortium

181.　Defendants negligently and intentionally caused injury to and the death of Abyesh Thulung.

182.　As a direct and proximate result of Defendants' actions and omissions, Plaintiffs have suffered a loss of consortium including loss of services, society, companionship, care, assistance, attention, affection, and assistance, and are thereby entitled to damages.

## COUNT XVI
### Spoliation

183.     Defendants APS, Morgan, Behary, and Ferrell knowingly, willfully, and in bad faith destroyed evidence they had an obligation to preserve.  The destroyed evidence was relevant to probable litigation and was critical to Plaintiff's ability to prove their claims.

184.     The destruction of evidence has disrupted Plaintiffs' ability to litigate the case and caused further damage to Abyesh Thulung and Plaintiffs.

## COUNT XVII
### Municipal Liability

185.     Defendants Akron Public School District Board of Education and Superintendent Robinson failed to provide an adequate policy to guide defendants, school officials, and teachers responding to bullying, violence, and student-on-student aggression such as what happened to students like Abyesh Thulung at NIHF.

186.     Defendants Akron Public School District Board of Education and Superintendent Robinson failed to provide an adequate policy to guide defendants, school officials, and teachers on how to respond to incident like those experienced by Abyesh Thulung at NIHF.

187.     Defendants Akron Public School District Board of Education and Superintendent Robinson failed to conduct a meaningful investigation into the actions of Defendants and thus ratified their actions as official APS policy, causing APS to be liable for their constitutional violations.

188.     The failure to provide adequate policies, training, supervision, monitoring, and investigation of Defendants' actions was outrageous and deliberately indifferent to the rights of students, including Abyesh Thulung.

189.     Defendants Akron Public School District Board of Education and Robinson's rules, regulations, customs, policies, practices, usages, procedures, inadequate training and supervision, and ratification of Defendants' actions were all inadequate and unreasonable and were the moving force being the constitutional deprivations suffered by Abyesh Thulung and Plaintiffs.

190.     As Superintendent, Robinson is the final decision makers for all APS policies, practices, and the decisions made to cover-up and hide evidence of aggressive behavior at NIHF.

191.     To the extent Defendants Morgan, Ferrell, and Behary acted in violation of APS policies, they were acting as final decision makers, whose actions were final and unreviewable and are not constrained by the official polices of superior officials.

192.     Defendants Morgan, Ferrell, and Behary ratified the acts of Defendants Rodgers, Jones, Walker, and Whiddon.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgement in their favor and pray for relief against Defendants as follows:

1. For an order granting Plaintiffs compensatory, punitive, treble, incidental, exemplary and other damages, in amounts determined by the finder of fact;

2. For an order granting Plaintiffs their expenses and costs, including reasonable attorneys' fees;

3. For an order granting Plaintiffs all other and further relief to which they are entitled at law or in equity.

## JURY DEMAND

Plaintiffs request a jury trial on all claims triable to a jury.

Respectfully submitted,

PERANTINIDES & NOLAN CO., L.P.A.

/s/ *Christopher Nolan*
CHRISTOPHER NOLAN (0006617)
300 Courtyard Square
80 South Summit Street
Akron, OH  44308-1736
(330) 253-5454
(330) 253-6524 - Fax
Email: cnolan@perantinides.com
*Trial Counsel for Plaintiffs*

THE SWEENEY LAW FIRM, LLC

/s/ *Sean M. Sweeney*
SEAN M. SWEENEY (0071428)
300 Courtyard Square
80 South Summit Street
Akron, OH  44308-1736
(330) 252-1772
(330) 762-8127 Fax
Email: sms@sweeneylawohio.com
*Trial Counsel for Plaintiffs*